DECISION
{¶ 1} Relator, Shirley J. Nelms, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order which denied relator's application for permanent total disability compensation and ordering the commission to find that she is entitled to such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be denied.
 {¶ 3} Relator filed objections to the decision of the magistrate contending that the magistrate erred (1) in refusing to grant a limited writ when the Industrial Commission had already accepted earlier doctor reports but did not rely upon them in this decision, (2) in not finding that the evidence which the Industrial Commission relied upon was equivocal, and (3) in affirming the Industrial Commission's decision finding that relator was not permanently and totally disabled. Relator is rearguing the conclusions of law adequately addressed in the magistrate's decision, and the objections are overruled.
 {¶ 4} Following an independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, the requested writ is denied.
Objections overruled; writ denied.
 Klatt, P.J., and French, J., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Shirley J. Nelms,: Relator, : v. : No. 05AP-297 Industrial Commission of Ohio : (REGULAR CALENDAR) and City of Columbus, : Respondents. :
 MAGISTRATE'S DECISION Rendered on August 23, 2005
Philip J. Fulton Law Office, and David B. Barnhart, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} Relator, Shirley J. Nelms, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to said compensation.
Findings of Fact:
 {¶ 6} 1. Relator sustained a work-related injury on May 8, 1986, and her claim has been allowed for: "right shoulder sprain, rotator cuff syndrome nos right, osteoarthrosis nos shoulder right, depressive disorder nec."
 {¶ 7} 2. Relator has had two surgeries on her right shoulder, one in February 2002 and the other in December 2003.
 {¶ 8} 3. Relator was paid temporary total disability ("TTD") compensation following her injury.
 {¶ 9} 4. On June 28, 2004, the Ohio Bureau of Workers' Compensation ("BWC") filed a motion with the commission requesting that relator's TTD compensation be terminated on the basis that relator's allowed conditions had reached maximum medical improvement ("MMI").
 {¶ 10} 5. A psychological evaluation was prepared by Beal D. Lowe, Ph.D., and dated April 22, 2004. Dr. Lowe opined that relator had reached MMI for her psychological condition, that from a psychological perspective, relator would be unable to resume her usual employment, and further that relator lacked the capacity to perform any occupation at this time.
 {¶ 11} 6. Ronald J. Bloomfield, M.D., examined relator for her allowed physical conditions and issued a report dated April 29, 2004. Dr. Bloomfield noted that he was unable to evaluate relator's shoulder because she would not permit him to touch her shoulder. Dr. Bloomfield opined that he did not believe that further physical therapy would be beneficial and recommended that relator's shoulder be examined by another examiner at a later date. Dr. Bloomfield indicated that he "suspect[ed] that the patient has indeed reached maximum medical improvement," and that it was "highly unlikely she would be capable of using her right upper extremity in a work setting." Dr. Bloomfield further concluded that he was "not optimistic about her ever being able to return to the workplace or making any significant improvements."
 {¶ 12} 7. The BWC's motion to terminate TTD compensation was heard before a district hearing officer ("DHO") on July 26, 2004, and resulted in an order granting the BWC's motion based upon the reports of Drs. Bloomfield and Lowe. The DHO concluded that relator's allowed physical and psychological conditions had reached MMI.
 {¶ 13} 8. Relator appealed from the DHO order and the matter was heard before a staff hearing officer ("SHO") on September 13, 2004. The SHO affirmed the prior DHO order and, in reliance upon the reports of Drs. Bloomfield and Lowe, relator's TTD compensation was terminated finding that her allowed physical and psychological conditions had reached MMI.
 {¶ 14} 9. On August 11, 2004, relator filed an application for PTD compensation. In addition to the evidence already in the claim file, relator submitted the July 26, 2004 report of Joseph Mileti, M.D., who opined as follows:
Given her situation, it seems as though this situation will not get much better. I think she has probably reached maximal medical improvement. I really do not have anything else to offer her. She has undergone two surgeries on the shoulder, one by someone else and one by myself. She has done poorly with each of these. I do not think that any other surgical intervention is warranted, and I do feel she has reached maximal medical improvement. Based on her abilities, I do not think that she could perform any reasonable physical labor with that upper extremity, and is more than likely disabled because of this.
 {¶ 15} 10. Relator was examined by Donald L. Brown, M.D., for her allowed psychiatric condition. In his report dated November 19, 2004, Dr. Brown noted as follows:
* * * She is now quite focused upon her shoulder and her pain according to what she said during the course of the examination but in watching her leave the building I felt there were some discrepancies and probably some exaggeration of symptoms, though not necessarily on a conscious basis. I believe that at some level that her pain and discomfort are her ways of saying to the world that she needs support that she did not receive as a child and adolescent. This is a characterological response to her injury and not a direct result of the injury. She's been allowed for depressive disorder NEC and I believe that she is stabilized with respect to this condition with the use of medication and some psychotherapy. There is no indication that it would prevent her from returning to her former position of employment or other forms of employment. That would depend on her physical status. It would cause her mild impairment in activities of daily living, socialization and concentration, persistence and pace with moderate impairment in adaptation.
Thereafter, Dr. Brown concluded as follows:
In my opinion, Mrs. Nelms has reached maximum medical improvement with respect to her previously allowed depressive disorder NEC and it can be considered permanent. Utilizing the 4th Edition of the AMA Guides to the Determination of Permanent Impairment, I would rate [her] as having a Class III level of impairment. This is a moderate level of impairment. Referencing the percentages from the 2nd Edition in the 4th Edition, I would rate her level of impairment at 25%.
 {¶ 16} 11. Relator was examined by Robert Turner, M.D., for her allowed physical conditions. In his November 19, 2004 report, Dr. Turner indicated that relator had a bad response to her surgeries, that she had reached MMI, and he assessed a 14 percent whole person impairment for her allowed physical conditions. Dr. Turner opined that relator would be capable of performing physical work activity at a sedentary level.
 {¶ 17} 12. Relator's application for PTD compensation was heard before an SHO on February 2, 2005. Based upon the reports of Drs. Turner and Brown, the SHO concluded that relator was capable of performing sedentary work with no restrictions on her employment related to her allowed psychiatric condition. Thereafter, the SHO examined the nonmedical disability factors and stated as follows:
The claimant is 57 years old. The Staff Hearing Officer finds this is a neutral factor toward reemployment. Some difficulty could be anticipated related to reacclimation into the work settings. However, her age would not prevent reemployment and she is sufficiently young enough to learn the skills necessary for entry-level work. The injured work[er] is a high school graduate. The Staff Hearing Officer concludes she has ample education for her to learn entry-level work. Entry-level work does not typically require a 12th grade education. The Staff Hearing Officer finds the claimant's education is an asset toward reemployment. The Staff Hearing Officer finds the claimant's work history is an asset toward reemployment. The claimant has a (13) year history that includes jobs with various work duties. The Staff Hearing Officer finds nothing in the claimant's work history that would result in transferable skills. However, the claimant's history demonstrates her ability to obtain and maintain long term employment. She further demonstrates the ability to learn and perform a variety of work tasks and to work in various types of work settings. Based on the claimant's age, education and work history, the Staff Hearing Officer finds the claimant is capable of learning the skills necessary to obtain and engage in entry-level sedentary work.
As the Staff Hearing Officer concludes the claimant is capable of engaging in sustained remunerative employment, the Permanent Total Disability application filed 08/11/2004 is denied.
 {¶ 18} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 20} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel.Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State exrel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 21} In this mandamus action, relator contends that the commission was required to grant her application for PTD compensation because, in terminating her TTD compensation, the commission had relied upon the reports of Drs. Bloomfield and Lowe who not only opined that she had reached MMI, but further opined that she was precluded from performing any sustained remunerative employment. Drs. Bloomfield and Lowe had examined relator and issued reports based upon BWC's June 28, 2004 motion requesting that the commission terminate relator's TTD compensation. In rendering those reports, Drs. Bloomfield and Lowe not only rendered opinions relative to the issue in dispute before the commission in 2004, but, also, issued opinions relative to relator's continued ability to perform any sustained remunerative employment. Relator contends that the inverse of the rule in State ex rel. Zamora v. Indus. Comm. (1989),45 Ohio St.3d 17, should apply.
 {¶ 22} The "implicit rejection" concept set out in Zamora
applies where the commission makes a finding which is necessarily premised on the rejection of a given doctor's conclusion. The court held that, once the commission has done so, the commission cannot later revive that report as evidence to support a later finding. Relator contends that the inverse must also necessarily apply: that where the commission makes a finding that is necessarily premised upon the acceptance of a given doctor's report, the commission must accept and rely upon that doctor's report in further proceedings. For the following reasons, the magistrate rejects relator's argument.
 {¶ 23} In the present case, when the commission reviewed the reports of Drs. Bloomfield and Lowe and relied upon them, the commission was specifically ruling on the BWC's motion to terminate relator's TTD compensation. The only issue before the commission was relator's continued entitlement to TTD compensation. On that sole issue, the commission found the reports of Drs. Bloomfield and Lowe to be persuasive and accepted them. Because the commission accepted the opinions of Drs. Bloomfield and Lowe that relator had reached MMI, relator contends that the commission was likewise required, at a later date, to accept the opinions of Drs. Bloomfield and Lowe that relator was also permanently and totally disabled.
 {¶ 24} Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission to determine. Teece, supra. Furthermore, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission. State ex rel.Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373.
 {¶ 25} When relator filed her application for PTD compensation she submitted the report of Dr. Mileti. The reports of Drs. Bloomfield and Lowe were already in the claim file. The commission scheduled her for examinations with Drs. Turner and Brown pursuant to Ohio Adm. Code 4121-3-34(C)(5)(a)(iii). The employer was also permitted to present evidence relative to the issue of relator's entitlement to PTD compensation and the commission was likewise entitled to have relator examined on this issue. When the issue of her entitlement to PTD compensation was squarely before the commission, the commission was free to evaluate all the evidence before it and determine whether or not relator was entitled to PTD compensation. The commission's prior reliance, at the TTD hearing, upon the reports of Drs. Bloomfield and Lowe, who gratuitously rendered their opinions relative to an issue that was not currently before the commission, did not, thereafter, require that the commission rely upon their reports on the issue of PTD compensation. Further, Dr. Bloomfield had acknowledged in his report that he had been unable to even touch relator's shoulder.
 {¶ 26} Relator also contends that the commission arbitrarily rejected the reports of Drs. Bloomfield and Lowe and was required to explain why the commission found them persuasive relative to the issue of her entitlement to TTD compensation and yet did not find those reports to be persuasive relative to the issue of her entitlement to PTD compensation. However, pursuant to State exrel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, the commission is not required to explain why it rejects one report in favor of another. The commission is only required to list that evidence upon which it relies and provide a brief explanation.
 {¶ 27} Relator also contends that the reports of Drs. Turner and Brown were equivocal and therefore could not constitute "some evidence" upon which the commission could rely.
 {¶ 28} Equivocal medical opinions are not evidence and have no probative value. State ex rel. Eberhardt v. Flxible Corp.
(1994), 70 Ohio St.3d 649. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.
 {¶ 29} Relator contends that the reports of Drs. Turner and Brown cannot be relied upon because those doctors specifically relied upon each other. Specifically, Dr. Brown opined that relator's psychological condition would not prevent her from returning to her former position of employment or other forms of employment; however, her ability to return to said employment would depend upon her physical status. Contrary to relator's assertion, this type of statement in Dr. Brown's report does not render his report equivocal. Dr. Brown was asked to give an opinion with regard to relator's allowed psychological condition. From a psychological standpoint only, he opined that she was able to return to her former position of employment or any other employment for which she was physically capable and otherwise qualified. The fact that Dr. Brown did not render an opinion as to her physical abilities does not render his report equivocal.
 {¶ 30} Relator also contends that Dr. Turner's report is defective because Dr. Turner indicated that relator's pain response made it difficult to get an accurate and objective assessment of the function of her shoulder. Dr. Turner then goes on, to the best of his ability, to give an opinion relative to her range of motion, assesses a 14 percent whole person impairment, and indicates that relator is capable of performing sedentary work. The fact that Dr. Turner indicated that relator's pain response made it difficult for him to assess her range of motion does not remove his report from consideration by the commission. Instead, the commission was permitted to determine the credibility of the report and give it whatever weight the commission found to be appropriate. The fact that Dr. Turner admitted difficulties in assessing her range of motion does not render his report equivocal.
 {¶ 31} Lastly, relator contends that the commission did not comply with Ohio Adm. Code 4121-3-34(D)(3)(I) which provides that where a psychiatric condition has been allowed in a claim and the injured worker retains the physical ability to engage in some sustained remunerative employment, the adjudicator is required to consider whether the allowed psychiatric condition, in combination with the allowed physical condition, prevents the injured worker from engaging in sustained remunerative employment. Upon review of the commission's order, the commission fulfilled its obligation under the rule. The SHO, as the adjudicator, took into consideration relator's allowed psychological and physical conditions, relied upon the reports of Drs. Turner and Brown, and concluded that relator was not precluded from some sustained remunerative employment. Furthermore, the commission analyzed the nonmedical disability factors and relator does not argue that the commission abused its discretion in this regard.
 {¶ 32} Based on the foregoing, it is the magistrate's decision that inasmuch as the commission cited competent, credible medical evidence upon which it relied, and provided an explanation for its decision, the magistrate finds that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and relator's request for a writ of mandamus should be denied.